## METROPOLITAN LIFE INS CO v KING

Ohio Appeals, 7th Dist, Mahoning Co
Decided Mar 13, 1931

Barnum, Hammond, Stephens & Hoyt, Youngstown, for Ins Co.

Nicholson & Warnock, Youngstown, for King.

### THE FACTS ARE STATED IN THE OPINION.

ROBERTS, J.

This is a proceeding in error. Insurance was taken out in the life insurance company by Dora Roemer, insuring her life in the sum of $690.00, as I recall it. She died. The company refused payment of the policy. An action was brought to recover, resulting in a verdict and judgment in favor of the plaintiff and against the insurance company. Error has been prosecuted to this court claiming that prejudicial and reversible error occurred in the determination in the Court of Common Pleas. Owing to the lateness of the hour and lack of necessity for going more deeply into this case, we will endeavor to come immediately to the essential proposition involved. There was a condition in this policy as follows:

"If, (1) the insured is not alive or in sound health at the date hereof; or if, (2) the insured * * * has, within two years before the date hereof, been attended by a physician, for any serious disease or complaint. * * * unless such previous disease is specifically recited in the 'space for endorsements' on page four in a waiver signed by the Secretary * * * then, in any such case, the company may declare this policy void and the liability of the company in the case of any claim under this policy, shall be limited to the return of premiums paid on the policy."

The company invoked the protection of this clause and tendered back the premium which had been paid and denied liability. This policy was dated July 28th, 1926. Dora Roemer died December 14, 1926, and within two years prior to the issuance of the policy, Dr. Walker testified that he was her personal physician and he had treated her for syphilis certain dates in 1925, extending from December 17th to December 30th, eighteen times. Then intervened a period of non-treatment, so far as this doctor was concerned, until October 30th, with six treatments prior to her death. This condition provided, as before read, and coming to the concrete proposition, if the insured has within two years before date hereof been attended by a physician for any serious disease or complaint. Eighteen instances of attendance or treatment are testified to by Dr. Walker within the prescribed period. That Dr. Walker did so treat her for that specific trouble or disease is not disputed. There is the testimony of Dora Roemer's mother, and that of a woman who seems to have been living in the house where Dora Roemer was living with her mother for some years, who testified to having known the insured since birth, and they gave testimony to the fact that as far as they knew Dora Roemer had not been ill and was in good health, and there was nothing in her appearance to indicate this or any other disease, that her skin was fair and unblemished. However, that does not respond to the previous question. She may have been apparently in fair health or good health. She may not have given any outward indication of this or any other disease. Nevertheless, she may have had a disease, but the important proposition under this policy is that it was void by the terms of it and as she accepted it, if she had been treated for any serious disease within the preceding two years. Now, the proposition is further important as to whether or not syphilis is a serious disease Dr Walker testified that it is. He further testified on perhaps cross examination that he did not know or recall that he had ever told this woman specifically that she had this disease, that he may not have gone further than to tell her she had an ailment of the blood and cautioned her with regard to it for her safety and the safety of other people of the household or those with whom she might come in contact, but whether she knew or not, that she had this disease, is not important, as has been held by 62 **Oh St**, 204. There was other testimony introduced on cross examination and perhaps directly upon a comparison with this disease with other diseases as to whether it

was serious or by comparison whether it might be considered more or less serious than others, and and it was compared with a cold, and the proposition was elicited that a person might recover from syphilis that a person might not recover from a cold, and that you might reason therefrom that a cold would be a more serious disease than syphilis and a cold should not be regarded as a serious disease. This reasoning or suggestion is fallacious. We all know that practically every person repeatedly and from time to time contracts and suffers from cold and ordinarily and as a rule recovers therefrom. Occasionally a cold may develop into tonsilitis or pneumonia or tuberculosis with a fatal result, but it will not be seriously contended, we apprehend, that syphilis is in the same class with a cold. The doctor said it was a serious disease. We do not regard it as necessary to even introduce evidence upon that proposition. The court is not obliged to ignore its own information or knowledge concerning those things which are generally understood and how they are regarded by the world at large. Syphilis, without doubt, is regarded, and properly so, as one of the greatest scourges in the way of disease that has ever afflicted the human race. It is somewhat of a disputed question yet by the medical profession as to whether a recovery is possible from it. Perhaps the weight of authority now is if it is taken early enough that a recovery may be had. On the other hand, it is maintained that persistent treatment may result in its remaining dormant, to break out again when vigilance relaxes in its treatment, and that as it does progress it frequently results in insanity and death in its final stages.

In addition to the authorities cited by counsel for the plaintiff in error, it is said in a well considered work, Nelson's Loose Leaf Living Medicine, as follows: "Public, profession and state realize that syphilis is a serious disease." This quotation is made because it expresses in precise language the proposition involved in this case. Counsel for the plaintiff in error has cited a large number of definitions taken from dictionaraies and decided cases as to what constitutes a serious disease. Time is not taken to quote therefrom, but from these authorities, and from the others which we have examined, and from the general knowledge of people, and, as we may say, the practically universal opinion, which we believe we have a right to notice, concerning the nature of this disease, we have no hesitancy in concluding it is a serious disease. That she was so treated is not denied, within the period provided for in

the policy, and such being the fact, no other conclusion than that the judgment of the Court of Common Pleas should be and is reversed, and final judgment may be entered in the case.

FARR and POLLOCK, JJ, concur.